HORTON D. WALKER *vs.* BOSTON INSURANCE COMPANY.
SAME *vs.* HOPE INSURANCE COMPANY.

The U. S. St. of 1851, c. 43, limiting the liability of the owners of a ship, for injuries occasioned by collision, to the value of their interest in the vessel and her freight then pending, does not impose any liability on the owner of the freight, who does not man, victual and navigate the ship.

The liability of insurers of a ship for damages occasioned to another ship by collision, and paid by the assured, extends to the whole amount for which he is liable under the U. S. St. of 1851, c. 43.

Under the U. S. St. of 1851, c. 43, the owners of a ship are responsible for injuries occasioned by collision to the extent of the value of their interest in the vessel and freight just before the collision.

ACTIONS OF CONTRACT upon policies of insurance of $8000 and $10,000 upon the ship Fortitude, valued at $18,000. The parties stated the following case :

" On a voyage to Havre, the ship came in collision with the barque Sir Robert Peel, by which both vessels were damaged. The ship subsequently arrived at Havre, where the cargo was delivered, and the freight, amounting to $15,000, paid. An adjustment of general average was made at Havre, in which the ship, in her damaged state, was valued at $6000. She was repaired at an expense of $8000, of which the defendants paid their proportion. Subsequently, being in London, she was

Walker *v.* Boston & Hope Insurance Companies.

libelled by the owners of the Sir Robert Peel in a cause of collision, condemned in damages and costs, and the plaintiff was obliged to pay, on account thereof, and of the expenses of defending the suit, about $10,000, and in these suits seeks to recover the sums so paid.

" The defendants, admitting a liability on account of the loss, insist that the amount should be apportioned on the aggregate value of the ship and freight at Havre, and that, for this purpose, they are not concluded by the valuation in the policy; and that the owner of the ship, as such, and consequently her insurer, is not liable for more than the value of the ship after the collision.

" The court is to determine on what principles and proportions the defendants are liable, and whether the valuation is conclusive, and the case is to be sent to an assessor, to determine the amount for which the defendants are liable; and, it that shall not exceed the sum already paid on account, the defendants are to have judgment for costs; otherwise, the plaintiff shall take judgment for the balance found due to him, with interest and costs."

*S. Bartlett,* for the plaintiff.

*F. C. Loring,* for the defendants. 1. The defendants admit that they are liable to the plaintiff as owner of the vessel insured, for damage done to another vessel and paid by him. *Nelson v. Suffolk Ins. Co.* 8 Cush. 477. *Peters v. Warren Ins. Co.* 14 Peters, 99. *Hale v. Washington Ins. Co.* 2 Story R. 176. It is not supposed that this court will yield to *General Mutual Ins. Co.* v. *Sherwood,* 14 How. 351.

But their liability is limited to what the owner has been obliged to pay in his capacity of owner of the ship, and does not extend to what he may have paid as owner of the cargo or freight. *Lapsley v. Pleasants,* 4 Binn. 502. *Maggrath* v *Church,* 1 Caines, 196. *Jumel v. Marine Ins. Co.* 7 Johns. 412. *Potter v. Providence Washington Ins. Co.* 4 Mason, 298. Emerigon des Assurances, *c.* 12, sect. 44.

The question therefore is, what is the liability of the owner of the ship. By the civil and common law his liability is meas-

ured only by the extent of the damage done. At common law the whole liability falls upon the owner of the ship; his liability is not affected by the value of ship or freight, nor lessened if he is not entitled to the freight; and the owner of the freight if not the owner of the ship, is under no liability for the damage done.

By the maritime law the liability is limited to the value of his vessel and freight, and by abandoning these the owner ceases to be personally liable.    Consolato del Mare, *cc.* 186, 239.    Emerigon des Contrats a la Grosse, *c.* 4, sect. 11.    Ordonnance de la Marine, lib. 2, tit. 8, art. 2.    Code de Commerce, art. 216 1 Boulay Paty Droit Com. & Marit. 269 *& seq.*    *The Rebecca,* Ware, 188.    *Stinson* v. *Wyman,* Daveis, 172.

The U. S. St. of 1851, *c.* 43, adopting this principle, covers the whole subject, and therefore supersedes the Rev. Sts. *c.* 32, §§ 1–4.    *Gibbons* v. *Ogden,* 9 Wheat. 1.    *Passenger Cases,* 7 How. 283.    It does not operate merely to modify and restrain the old common law liability, but creates a new and different liability, and makes the owners of ship and freight liable for the contracts and torts of the master to the extent of the value of these subjects.    It creates a charge on the freight and its owner, which did not exist at common law, and puts it and him upon the same footing with the ship and its owner as to liability for damage for collision.    It imposes a liability or charge, privilege or lien, upon the ship and freight, which does not exist by the common law; it makes the liability of the owners secondary instead of primary, real rather than personal, and releases them from it when they elect to abandon the things.

If the ship is chartered, and navigated by the charterer, he is the owner, within the meaning of the act of congress; and it must be the freight, which he has pending, and not the charter money, to be paid to the owner, which is liable for damages, and which determines the amount of liability.    See § 5.

Vessel and freight being subject to a common charge, not occasioned by the fault of their owners, but by that of the master, for whose good conduct the law makes them sureties, if the owner of either pays the whole, he is entitled to a contribution

from the other *pro rata*, and their respective insurers are liable in the same proportion. 1 Story on Eq. § 548.

The personal liability of the owner of the vessel, and consequently that of his insurers, is to be determined by the value of the vessel after the collision, and the value of the freight then pending. By the U. S. St. of 1851, *c.* 43, § 3, the liability of the ship owner, as such, is never to exceed the value of the ship. If he pays this he is absolved from all personal liability, and the ship also, by the same payment, is released from all liability; otherwise, he might be made twice liable for the value.

The statute provides, in § 3, that the liability of the owner of any ship " for any embezzlement, loss or destruction by the master, mariners or other persons " of property on board, or " for any loss, damage or injury by collision," or for any act done or damage occasioned without his knowledge, shall not exceed his interest in the ship; and, in § 4, that " if any such embezzlement, loss or destruction shall be suffered " by several freighters or owners of property on the voyage, beyond the value of the ship, and her freight for the voyage, they shall receive compensation *pro rata ;* " and it shall be deemed a sufficient compliance with the requirements of this act on the part of such owner," if he shall transfer his interest in the ship and freight to a " trustee for the persons who may prove to be legally entitled thereto, from and after which transfer all claims and proceedings against the owner shall cease."

Under this statute the owner may clearly, by abandoning the ship, discharge himself from personal liability for embezzlement of property. If he may by abandonment discharge himself from liability for criminal acts of master and crew, he should have the same privilege where he is liable for mere negligence or want of skill. In either case he is liable only to the extent of the value of the thing; and that liability must cease, alike in both cases, either by paying the value of the thing or abandoning it.

As an abandonment determines all personal liability, the value of the thing must be the measure of that liability, and it necessarily follows that that value must be taken when the right to

abandon begins to exist, namely, after the delict. No liability exists previously; it arises when the delict is committed; the owner may then abandon; what he may abandon is the thing as it then is, and as the value when he may abandon is the measure of his personal liability, it must be taken at that time.

If his ship is damaged and lessened in value, his personal liability corresponds. If it is destroyed in the collision he is under no personal liability, because the measure of that liability has become nothing, and because it could not have been the intent of the law that if his ship were damaged he might abandon and be released from all personal liability, but that if it were destroyed the personal liability should continue. If the damage done exceeds the value of the ship and freight, and a claim is made, the owner will of course abandon, and there will arise no question of value.

By the marine and continental law it would seem that an abandonment might be made at any time, and such must be the construction of the United States Statute, so that if the vessel is lost at any time afterwards during ownership, the personal liability must cease. Jacobsen's Sea Laws, 46, 47. Emerigon des Contrats a la Grosse, c. 4, sect. 11. *Wattson* v. *Marks*, 2 Amer. Law Reg. 157. *Stinson* v. *Wyman*, Daveis, 176.

The freight which may be abandoned is the freight for the voyage then pending, and the value of the vessel must be taken at the same time; the two are coupled together and made subject to a common charge. There can be no reason for taking their values at different times. If the freight has been received, it cannot be properly abandoned at a future time; the owner can only offer to pay an equal sum. As to the ship, the owner may abandon it or pay its value; but if he has sold it, he cannot thereby avoid his liability, and he must remain personally liable for its value just after the delict.

Even if the right of apportionment is not given by § 4 in cases of collision, the right of surrender is; for a surrender is expressly declared to be " a sufficient compliance with the requirements of this act," which requirements are to be found in § 3 rather than § 4. And the right of surrender does not depend,

as the right of apportionment does, on the question whether more than one person is damaged.

But if, in cases of collision, the right of abandonment does not exist, the measure of the owner's liability must still be the value of the ship and freight after the delict. The words of § 4, " loss " by the owners of " any property whatever," are broad enough to cover all cases, especially when the word " loss " has been applied in § 3 to each class of cases, and both are within the same equity.

If then the limit in cases of embezzlement is the value after the delict, it must be so in cases of collision. That is the time in cases of embezzlement, because there the right to abandon is given ; and it follows that the same time must be taken in collision. In *Wattson* v. *Marks*, 2 Amer. Law Reg. 157, it was held by Kane, J., in a case of embezzlement, that the value of the ship was to be taken after the delict, and if the ship was lost at the time, or afterwards, the liability ceased, and an abandonment was not required. See also *Stinson* v. *Wyman*, Daveis, 176.

The English decisions, that the value of the ship and freight is to be taken just before the collision, are based on statutes which contain no provision for an abandonment. *Sts.* 7 G. 2, *c.* 15; 26 G. 3, *c.* 86; 53 G. 3, *c.* 159; 17 & 18 Vict. *c.* 104, § 503. *Wilson* v. *Dixon,* 2 B. & Ald. 2. *Gale* v. *Laurie,* 5 B. & C. 156. *Brown* v. *Wilkinson,* 15 M. & W. 391. *The Mary Caroline,* 3 W. Rob. 101. *Dobree* v. *Schroder,* 6 Sim. 291, and 2 Myl. & C. 489.

These cases were decided in June 1860.

MERRICK, J. These actions are brought upon policies issued by the defendants upon the Ship Fortitude, valued therein at $18,000, and together covering the entire value of the ship. It is the well established law of this commonwealth that under-writers insuring vessels against perils of the sea are bound to reimburse to the assured the amount which he has been obliged to pay to the owners of another vessel for damages suffered in a collision with his own, caused by the master or mariners of whom she is in charge. *Nelson* v. *Suffolk Ins. Co.* 8 Cush. 477. This is not denied by the defendants; and they accordingly sev-

25 *

erally admit that an action may be maintained against them upon these policies on account of the loss disclosed in the agreed statement of facts. No controversy therefore arises in relation to their general liability; but the parties are at variance as to its measure and extent. The plaintiff claims that he is entitled to recover of the defendants their respective portions of the entire loss, which was less than the value of the ship, resulting from the collision with the Sir Robert Peel. But the defendants contend that their liability is limited to the share which would fall upon the ship in an apportionment of the loss upon the value both of the ship and freight; or, at most, to the value of the ship, estimating it in the condition in which it was left immediately after the occurrence of the collision.

Previously to the enactment of any statutory provisions upon the subject, the rights and responsibilities of parties depended upon the principles of the common law which had been adopted and practised upon in this country. *Stinson* v. *Wyman,* Daveis, 175. It is very accurately stated by the counsel for the defendants, that at common law the whole liability falls upon the owner of the ship; it is not affected by the value of the ship or freight, nor lessened if he is not entitled to the freight; and the owner of the freight, if not the owner of the ship, is under no liability for the damage done. This proposition is fully warranted and sustained by all the authorities. " The owner of a ship," says Chancellor Kent, " is bound for the whole amount of the injury done by the master or crew, unless where ordinances or statutes have established a different rule." 3 Kent Com. (6th ed.) 217. The same doctrine has been affirmed by Dr. Lushington, who states emphatically that at common law the whole damage, though it infinitely exceed the value of the ship and freight, may be recovered of the owner. *The Volant,* 1 Notes of Cases, 508. *The Mary Caroline,* 3 W. Rob. 106, and 6 Notes of Cases, 538, 539. It is nowhere laid down or asserted, in any of the authorities, that the person who has become entitled to receive the freight which may be earned, but who has no interest in the ship, is subject to any such responsibility. And that such liability does not extend to the person to whom, by any contract

of sale, hypothecation or assignment, the freight is payable, but must be restricted and confined to the owner of the ship, is obvious, when the principle on which that liability depends is considered; that is, the responsibility of the principal for the acts of his agent. "The rule," says Ware, J., "which holds the principal responsible for the tortious acts of the agent, will include the master of a vessel." *The Rebecca,* Ware, 207. This rule extends with equal force to all the officers and mariners employed in the prosecution of a voyage on which it may be sent. They are employed and put on board by the owner. They are engaged in his service, and act for him, for the time being, in the control and management of his property. They stand in his place by his direction and appointment, and are therefore his agents, for whose acts and conduct the law makes him responsible. But no such relation exists between them and one who has no other interest than the mere right to receive the freight which may be earned. The latter has no interest in, and can exercise no authority over, the ship; he does not employ the master or any of the crew; and none of them are subject to his authority, nor bound, nor even at liberty, to comply with any direction he may give them. They are therefore strangers to him, and nothing which they do can impose upon him any liability.

But the defendants contend that all this is changed by the provision of the act of congress entitled "an act to limit the liability of shipowners, and for other purposes." U. S. St. 1851, *c.* 43, 9 Sts. at Large, 635. They insist that that act does not operate merely to modify and restrain the old common law liability, but that it creates a new and different liability; that it creates a charge upon the freight and its owner, which did not exist at the common law, and puts it and its owner upon the same footing with the ship and its owner as to liability for damage.

It is not pretended that the proposition thus asserted is directly or in express terms enacted by the statute; and it appears to us very plain that, upon a careful analysis, no such conclusion can be deduced from it upon any proper and just construction of its provisions.

All the provisions of the statute which have any bearing upon the question are contained in the third, fourth and fifth sections. They are as follows:

" SECT. 3. The liability of the owner or owners of any ship or vessel, for any embezzlement, loss or destruction, by the master, officers, mariners, passengers or any other person or persons, of any property, goods or merchandise, shipped or put on board of such ship or vessel, or for any loss, damage or injury by collision, or for any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively in such ship or vessel, and her freight then pending.

" SECT. 4. If any such embezzlement, loss or destruction shall be suffered by several freighters or owners of goods, wares or merchandise, or any property whatever, on the same voyage, and the whole value of the ship or vessel and her freight for the voyage shall not be sufficient to make compensation to each of them, they shall receive compensation from the owner or owners of the ship or vessel in proportion to their respective losses; and for that purpose the said freighters and owners of the property, and the owner or owners of the ship or vessel, or any of them, may take the appropriate proceedings in any court, for the purpose of apportioning the sum for which the owner or owners of the ship or vessel may be liable amongst the parties entitled thereto. And it shall be deemed a sufficient compliance with the requirements of this act, on the part of such owner or owners, if he or they shall transfer his or their interest in such vessel and freight for the benefit of such claimants, to a trustee, to be appointed by any court of competent jurisdiction, to act as such trustee for the person or persons who may prove to be legally entitled thereto, from and after which transfer all claims and proceedings against the owner or owners shall cease.

" SECT. 5. The charterer or charterers of any ship or vessel, in case he or they shall man, victual and navigate such vessel at his or their own expense, or by his or their own procurement, shall be deemed the owner or owners of such vessel within the

meaning of this act; and such ship or vessel, when so chartered, shall be liable in the same manner as if navigated by the owner or owners thereof."

The third section contains provisions in relation to two distinct classes or objects of loss and damage; first, as to the embezzlement, loss or destruction by the master, mariners or other persons, of goods, merchandise and property shipped or put on board a vessel; and secondly, as to injuries done or damage resulting from collision or other acts committed without the knowledge or consent of the owner. And in each and all the instances enumerated, the liability of the owner to make compensation for the loss is restricted in amount to the value of his interest in the ship and the freight then pending. The purpose of the legislature in the enactment of this statute, and the object to be accomplished by it, can hardly be mistaken; and in view of that object, the just interpretation to be put upon its language appears to be very clearly and significantly indicated. Up to that time, under the established principles of the common law which had theretofore prevailed in the United States, shipowners were liable for the entire loss or damage occasioned by the tortious acts of the master or other persons in their employment on board their vessel, to an indefinite amount, even though, in the language of Dr. Lushington in the cases above cited, " it should infinitely exceed the value of both the vessel and the freight." But the maritime law was otherwise. " The general sense of the commercial world," says Ware, J., in the case of *The Rebecca*, Ware, 207, " seems to be satisfied with holding the owners of vessels responsible to the extent of their interest in the ship, and by abandoning the ship and freight to the creditors, they are discharged;" and accordingly, that rule has prevailed among the maritime nations on the continent of Europe.

Appreciating the reasonableness of that limitation, in view of the extreme hazards of an indefinite extent of liability to which shipowners under the existing system of law were exposed, the different legislatures in England and in this country at length adopted the principle and established a similar rule. See

English statutes cited by the counsel for the defendants. *Sts.* 7 G. 2, *c.* 15; 26 G. 3, *c.* 86; 53 G. 3, *c.* 159; 17 & 18 Vict. *c.* 104, § 503. As early as February 1819, a statute was passed by the legislature of Massachusetts, to which is prefixed a preamble, reciting what had been held to be the existing law in relation to the liability of owners of ships, and setting forth the reasons why a change and alteration of the law in that respect ought to be made. This object was the relief of owners of ships by limiting their responsibility, because the previous indefinite extent of liability tended to the discouragement of trade and navigation. *St.* 1818, *c.* 122. These provisions were reënacted and somewhat enlarged in the Rev. Sts. *c.* 32, §§ 1–4. The statute of the United States soon followed, and is in all respects, except in a single provision presently to be adverted to, almost a literal copy of our own. In substance there is no difference between them. As the purpose of the former is in the act itself expressly declared to be for the encouragement of trade and navigation, by obviating the objection, arising from an extreme and indefinite liability of merchants and others to an investment of their property in ships and becoming interested and concerned therein as proprietors, it is not unreasonable to infer, from the close similarity of its provisions, that the same purpose was in view in the enactment of the latter. Indeed, there is nothing in the language or expressions in any section of either statute, by which the liability of a shipowner is thenceforward to be circumscribed and confined, to indicate an intention to create new liabilities, or to subject other parties to responsibilities which did not before attach to them.

In the act of congress, it is declared that the liability of the owner or owners of ships shall in no case exceed the amount or value of their respective interests in the ship and the freight then pending. Freight is not mentioned in any such connection as to have a tendency to show that those entitled to receive it shall be chargeable for damage caused by the misconduct of the master or mariners, or of persons on board the ship; but only as one of the elements to be taken into the estimate in ascertaining the measure and extent of the compensation to be paid by the

owners of the ship for the damage caused by the wrongful acts of those, persons whom they have employed or permitted to be on board. If it had been intended to impose a burden upon parties who by the existing law were under no responsibility, and who have no power or control over the ship, or its master or mariners, that intention would undoubtedly have been manifested in clear and unambiguous terms, and would not have been left to be developed by inference from expressions which in their common and usual signification, as well as in the particular connection in which they are used, appear to be applicable to an entirely different purpose.

In general, the owner of the vessel, or, if it be chartered, then the charterer, is the owner also of the freight. It may be that by a sale or assignment the assignee may become entitled to receive it. This last condition of things does not appear to have been at all contemplated by the legislature in the enactment of the statute, and accordingly no provision is made respecting it. But as the owner of the vessel is commonly the owner also of the freight, it was necessary to prescribe a rule in the contingency of its being chartered. The fifth section was accordingly added for that purpose ; and it is there provided that charterers of a vessel, who man, victual and navigate it at their own expense, shall be deemed the owners of it, within the meaning of the act; and in such case they, like the actual owners, are made liable for damages occasioned by any negligence or tortious conduct or mismanagement of the master or mariners to the value of the ship and freight. Here is an express provision, cautiously introduced in relation to charterers, who by the common law would, as principals engaged in prosecuting the voyage, be responsible for the acts of the persons on board employed in their service, that there might be no doubt or misapprehension either as to the fact or the measure and degree of their liability. From such care and precision in declaring and establishing the law in relation to such parties, it may fairly be inferred that its provisions were intended to be applied to those parties only who were expressly named; and that it would be unreasonable to enlarge their meaning by any ingenious or plausible construction, so as

to impose new and serious liabilities upon others who were before subject to no responsibility.

In the absence of any prescribed rule or regulation respecting the rights and liabilities of persons entitled, by virtue of any sale, assignment or transfer, to receive the freight which may ultimately be earned by the due transportation of goods and merchandise, distinct from those of the owner of the ship, the several provisions of the statute should have such a reasonable construction as to effect the manifest intent and purpose of the legislature in its enactment. The aggregate value of his interest in the ship and pending freight is made to constitute the amount beyond which he cannot be required to make compensation in any of the designated instances of injury and loss. Considered in this connection, it is obvious that freight is spoken of, not with any purpose of imposing a new responsibility upon other parties, but only as one of the items to be taken into estimation in ascertaining the extent and limitation of the liability of the party who is already responsible. The particular and exact interest, which is thus to be resorted to as one of the elements to be considered in making the necessary and prescribed computation, is that which is acquired, or in the course of being acquired by the performance of the stipulated service in the carriage of the cargo. It can make no difference in this respect how, or in what manner, or from whom, the owner of the ship receives his compensation. If for a valuable consideration he has transferred or assigned to another person the right to receive the money which may be earned, this does not affect his interest, but only authorizes the assignee to take and avail himself of it to his own benefit. The amount or value of the interest of the carriers remains the same, by whomsoever the freight is paid ; and the statute makes that value one of the elements to be estimated when the measure and limit of his liability are to be determined. Thus in all cases of injury, loss or damage for which the owners or charterers of a ship are responsible, the injured party will have a full and complete remedy against them to the full extent of the prescribed limitation, just as, before its enactment, he would have had it against the same persons to recover

compensation without restriction, and to the utmost extent of the damage caused by the injury inflicted. Upon this interpretation of the provisions of the statute, they who were, by the law previously existing, liable for the misconduct of the master, mariners and passengers on board their ship, continue still to be so, though only to a modified and defined extent; but no new charge or burden is imposed upon others who have no share or participation in its control or management, and who were not otherwise subject to any responsibility.

This result conforms to the conclusions which have been reached and adopted in adjudged cases, in which a construction has been put upon similar provisions in other statutes. In the case of *Pope* v. *Nickerson*, 3 Story R. 492, in commenting upon the statute of Massachusetts, (Rev. Sts. *c.* 32,) the consideration and construction of which became material in adjudicating upon the question in issue, it is said by Story, J., that its only effect was to interpose a limitation to a liability, which before was co-extensive with the amount of loss, and restrict it to the value of the ship and freight. If that was its only effect, then certainly it made no transfer of any part of the burden, which was before to be borne by the owner of the ship, to the owner of the freight, either by dividing or apportioning the loss resulting as a consequence of the injury committed, or by imposing upon the latter any share of the responsibility to which the former had previously been alone subject. A similar view of the provisions of the English statute is taken by Parke, B., in the case of *Brown* v. *Wilkinson*, 15 M. & W. 397, where he affirms that all that is done by it is to restrict the liability of the shipowner to the value of the ship, without designating the time at which the value is to be ascertained.

The defendants, in support of their proposition that a charge is created by the statute against the freight and the owners of it, considered as distinct from the ownership of the ship, and consequently that there is always to be an apportionment of the loss for which compensation is to be made, upon the ship and freight, and that the value of the ship is in all cases to be taken in the condition in which it remains immediately after the oc-

currence of the wrong committed, rely chiefly upon the provisions of the fourth section, which permits a transfer of the ship and freight for the benefit of the injured party in full satisfaction of his claim. But it seems to us very clear that neither the language of the statute, considered in its literal meaning, nor any proper interpretation of it, will warrant any such conclusion. All its provisions are evidently founded upon the assumption that the owner or charterer of the ship is also the owner of the freight. And there is in no part of it any allusion to, or intimation of, a supposition that these distinct things are in the ownership of different persons disconnected with each other. Such an idea is on the contrary very intelligibly excluded. The fourth section provides that if there shall have been any embezzlement, loss or destruction of the property of several persons, whether the freighters, or otherwise owners of it, and the value of the ship and freight for the voyage shall be insufficient to make full compensation to each of them, compensation shall be made in proportion to their respective losses; and either of them, or of the owners of the ship, may institute suitable legal proceedings for the purpose of effecting the proper apportionment; and then it is added that it shall be a sufficient compliance with the requirements of the act, if such owner — that is, the owner of the ship, no other owner having been before mentioned or alluded to — shall transfer his interest in the ship and freight to a duly appointed trustee for the benefit of the persons legally entitled to compensation. It is the shipowner only, who is allowed to do, or who can do, this; for he is to transfer both ship and freight. No such right or privilege as this is granted or conceded to a person whose only right or interest is to receive the freight which may eventually be earned; and it would certainly be out of the power of such a person to transfer any interest in the ship; but that, as well as the freight, must be transferred before the contingency arises upon which all proceedings against the owner — by whom must undoubtedly be understood the owner of the ship, since no other is spoken of or in any way described — shall cease and be determined. It is thus apparent, not only that no charge is created and no liability

imposed upon any other party beside the owner of the ship; but that he is recognized and declared to be the person directly and solely responsible for the loss incurred. The privilege is accordingly given exclusively to him, if he shall choose to avail himself of it, to surrender, in the cases provided for, both the ship and freight; and it is not granted to any other, because there is no other person able to do it, or who is subject to any liability on account of the loss.

The conclusion then must be, that, as there was not under the previously existing law, so there is not under the provisions of the statute, any such responsibility upon one who is the owner of freight merely, nor can there be any such apportionment of the compensation to be paid on account of damage done or losses incurred, as is contended for by the defendants. It remains therefore only to consider, whether in a case of injury occasioned by collision, the value of the ship is to be estimated in view of its condition immediately before, or at any time subsequent to its occurrence.

It must now be considered to be the settled law in England, upon a comparison of the provisions of the several acts of legislation there, that the value of the ship in the case of an injury resulting from the acts of the master and crew, for which the owner is responsible, is to be estimated at the point of time immediately preceding the delict. This rule was distinctly affirmed in the case of *Wilson* v. *Dickson*, 2 B. & Ald. 2, and has since been repeatedly recognized as a just conclusion to be deduced from the provisions of the statutes upon the subject. In *Brown* v. *Wilkinson*, 15 M. & W. 397, it was suggested by Parke, B., that it would perhaps originally have been more correct to have taken the commencement of the voyage as the point of time when the estimate of the value of the vessel should be made; but the court adhered to and affirmed the rule which had been established by previous adjudications. The question subsequently arose in the case of *The Mary Caroline*, 3 W. Rob. 101, and 6 Notes of Cases, 536 ; but in view of former decisions it was held by the court that it was no longer open for consideration. To the like effect it is said by Story, J.,

that the right of recovery by the shipper, in a case of tort, will not be affected if the ship perishes after the cause of action has accrued. *Pope* v. *Nickerson*, 3 Story R. 498.

There is however, in one respect, a material distinction between the English statutes and the act of congress in relation to the rights and liabilities of owners of ships; inasmuch as in the former there is no provision for a discharge of the owner of the ship, in any case, from personal liability upon his transfer and surrender of the ship and freight for the benefit of the persons entitled to recover compensation for injuries inflicted to the amount of their united value. And certainly no decision of any court in reference to a statute containing no such provision can be regarded as conclusive of the proper interpretation to be put upon this part of the act of congress. But the question whether the general liability of shipowners by the common law, which was well known to have been previously adopted and established in this country, was changed or intended to be changed by its provisions, in any other respect besides subjecting it to a fixed and prescribed limitation, must be determined upon due consideration of its language and the obvious purpose and design of the legislature in its enactment.

The argument on the part of the defendants is, that from the unqualified right conferred upon the owner to surrender and transfer his ship and the freight for the voyage in the designated instances to a trustee, for the benefit of those entitled to recover compensation for losses sustained, and thereupon to be discharged from all further personal responsibility, it results by necessary implication that his liability can never exceed the value of the ship and freight estimated at the time when the claim for compensation is made. And they accordingly contend that this rule is to be applied and enforced not only in cases where, subsequently to the wrong done, the ship from any cause has been essentially impaired in value, but also in those in which it has been totally lost and destroyed; and that in the latter class of cases the injured party has no legal remedy, nor the means of obtaining any redress.

An opinion to that effect is expressed by Kane, J., in the case

of *Wattson* v. *Marks*, 2 Amer. Law Reg. 157, determined in the district court of the United States for the eastern district of Pennsylvania. From the facts there reported, it appears that a quantity of gold dust was shipped on board the Union, bound from San Francisco to Panama. While on the voyage, she was wrecked and totally lost on the coast of California. At the time of the wreck, but precisely at what time, whether immediately before or after the loss of the vessel, does not appear, the gold dust was stolen or embezzled, and a suit to recover its value was afterwards prosecuted against the owners of the ship. The court held, that as at the time of the commencement of the action the vessel had ceased to be of any value, and no freight had been earned, the action could not be maintained, and judgment was accordingly rendered in their behalf.

But we cannot adopt that opinion, nor do we think it can be justly sustained. It appears to have been founded upon the assumption, which seems to us to be manifestly erroneous, that the liability of the owner is limited by the terms of the statute to his interest in the ship; so that all legal proceedings for the recovery of damages are rather in the nature of proceedings *in rem* than *in personam*. But in fact, the limitation is in very plain and express terms declared to be, not his interest, but the " amount and value " of that interest. That he is personally liable, in each and every one of the enumerated instances of wrong or loss, is clearly recognized as an undoubted principle of law in all the provisions of the statute, which nowhere purport to affect or change the nature and character of the liability; but only to introduce and establish a new rule in relation to its extent, by declaring that it shall in no case exceed a certain designated and prescribed amount. And the limitation thus prescribed being the united value of the interest of the ship and pending freight, the point of time at which the valuation is to be made and taken is plainly and significantly indicated. Freight still pending is a thing contingent, which may or may not be earned. There can be no freight pending when all uncertainty concerning it has ceased, either by the completion of the service to be rendered in the transportation, or by the total

26 *

defeat of the voyage and the destruction and loss of the cargo. The freight is pending when the mischief, loss or injury for which compensation is sought occurs; and that therefore fixes the time when its value, as well as the value of the ship, is to be estimated, in ascertaining the measure and extent of the owner's liability. In all the instances thus far enumerated in the third section of the statute, the limit of the liability of the owner of the ship is its value, added to that of the pending freight, to be estimated in the condition of things as they existed at the period immediately preceding the commission of the act from which the right or cause of action arises.

In the case of embezzlement, loss or destruction by the master, mariners or passengers, of property lawfully put on board, the owner may, under the express provisions of the fourth section of the statute, if he chooses to do so, when a personal action is brought against him for the tort, transfer the ship and freight to a trustee duly appointed for the benefit of all legal claimants; and thereupon the claim, as well as all the legal proceedings against him, shall cease. But this is a privilege only, and it cannot be availed of, except upon compliance with the terms upon which it is given. Its concession to him proceeds upon the assumption that his ship is still in existence, and that he can transfer it, and make also an assignment of the freight which was pending when the injury was inflicted. It can make no difference, therefore, whether he will not, or cannot, make the assignment, which is an indispensable prerequisite to the cessation of legal proceedings in the personal action against him. If he does not in fact make it, the action against him may be pursued to judgment; and in such case the damages are to be found and assessed according to the measure of the injury, but restricted and confined, at all events, within the rule of limitation prescribed by the statute.

But from another consideration it is apparent that this provision for the release and discharge of the owner from all further personal responsibility, upon his transfer and surrender of the ship and freight for the voyage, for the benefit of all legal claimants, does not show that the estimate of value may, in a case

of collision, be made at any time subsequent to its occurrence. The privilege of exonerating himself from his individual liability, and of causing all legal proceedings against himself to cease, by the surrender and transfer of the ship and freight, is not given to a party who is responsible for damages resulting from that cause; but is strictly confined to cases in which freighters or other owners of property have sustained losses in consequence of its embezzlement or destruction by the master, mariners or passengers on board the ship. The language of the statute is, that when damages have been sustained by several freighters or other owners of goods, wares, merchandise or property, by means of its embezzlement, loss or destruction by the acts of the master, mariners or passengers, and the whole value of the vessel and freight for the voyage shall be insufficient to make compensation to each of them, they shall receive compensation in proportion to their respective losses; and the method is pointed out, in which the apportionment is to be made amongst them of the sum which the owner or owners of the vessel are liable to pay; and it then adds that it shall be a sufficient compliance with the requirements of the act, if the owners of the ship shall transfer their interest in it, together with the freight for the voyage, to a trustee for the benefit of "such claimants," that is, those persons immediately before mentioned, namely, the freighters or other owners of property duly shipped or put on board the vessel. No other persons are named or alluded to in this connection, and it is therefore only when provision is made in their behalf by the authorized transfer of the ship and freight, that the owner can claim to be exempted from further responsibility, or require that legal proceedings against himself shall cease. The distinction is obvious. It is observed and remarked upon by the court in the case of *Wattson* v. *Marks*, above cited.

It is not difficult to understand why a difference should have been made in the two classes of cases, and a privilege given in one which is withheld in the other. By the embezzlement, loss or destruction of merchandise, or of any kind of personal property put on board, no mischief is done to the vessel; its capacity

to pursue and complete its voyage is not affected, nor is it in any manner or degree injured, impaired or deteriorated. Its value remains substantially unchanged upon arrival at its port of destination, and it is therefore not unjust that with the pending freight it should be surrendered and delivered up to those freighters who are entitled to compensation for their property which has been embezzled, wasted or lost by the unlawful acts of those for whom its owners are responsible.

But it is quite otherwise when damage is caused by collision, or results from unlawful acts in some of the other enumerated instances in which the owner is held liable. It is scarcely possible that a ship coming in collision with another, and doing mischief thereby, should not be more or less injured, or even made wholly worthless. To limit the liability of the wrongdoer for the damage caused by him or his agents, to the value of his ship after it has, by his or their misconduct, become worth little or nothing, and to allow him to transfer it in that state to the injured party in full satisfaction of the compensation to which he is entitled would be little less than an absolute refusal of redress, and a bare denial of his rights. For acts of the master or mariners, by which a forfeiture of goods or merchandise put on board is caused, the owners of the ship are, by the third section, made liable; yet upon the construction contended for by the defendants, if by the same wrongful act of the master or mariners, as by a violation of the revenue laws of any country, for instance, the ship as well as the cargo should be forfeited, the owner would thereby be absolved from all responsibility; thus leading to the absurdity of declaring him to be liable in one section, and releasing and discharging him from all personal obligation by the provisions in the next.

But it is unnecessary to seek for or consider what were the reasons which induced the legislature to create and establish this distinction. It is sufficient that the privilege of transferring the ship and freight for the voyage, in satisfaction of the claims of freighters and other owners of property put on board, is given to the owner of the ship only in those cases; and therefore neither such transfer, nor the subsequent loss and destruction of the

vessel, can operate to fix and determine the measure and extent of liability, or to bar the prosecution of a suit for the recovery of compensation for damages occasioned by other means. The rule which previously existed remains unchanged, and the limitation of the liability is to be ascertained upon an estimation of the value of the ship at the point of time immediately preceding that when the wrong was done and the injury inflicted.

From these conclusions it is a necessary consequence that the owner of the Fortitude was, upon the case stated, liable to the owners of the Sir Robert Peel to the extent of the value of his vessel, estimated in the condition in which it was immediately before the occurrence of the collision; and consequently that he is entitled to recover of the defendants, as insurers of it, the sums respectively demanded of them, the aggregate of which he paid under legal compulsion. *Judgment for the plaintiff.*